UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF:

CASE No. 8:18-cv-191-T-30TGW

THE COMPLAINT OF A.B.K.
ENTERPRISES, INC. AS OWNER
AND TROPICAL BREEZE CASINO
CRUZ, LLC, AS OWNER *PRO HAC
VICE* OF THE *ISLAND LADY*
(U.S. ON 1020747),
IN A CAUSE OF EXONERATION
FROM OR LIMITATION
OF LIABILITY,

          Petitioners.

_____

## REPORT AND RECOMMENDATION

In this limitation of liability action, claimant Christopher Rivera has filed a Motion to Increase the Security (Doc. 195). He and other claimants argue that, pursuant to the flotilla doctrine, the security must be increased to include the value of all the vessels and appurtenances involved in the "Tropical Breeze Casino Cruz" business. The petitioners argue, meritoriously, that the flotilla doctrine does not apply in this case. Therefore, I recommend that the motion be denied.

I.

On January 22, 2018, the petitioners, A.B.K. Enterprises, Inc., and Tropical Breeze Casino Cruz, LLC, filed a complaint pursuant to Supplemental Rule F of the Federal Rules of Civil Procedure for exoneration and limitation of liability regarding the vessel, Island Lady (Doc. 1). A.B.K. owned the Island Lady, a 72-foot long small passenger vessel. The Island Lady operated as a water taxi, transporting passengers and employees between a shore side facility in Port Richey, Florida, and the company's casino boat, the Tropical Breeze I, located approximately 9 nautical miles off of the coast of Pasco County, Florida, in the Gulf of Mexico. The vessel, by law, must be offshore nine miles in order to operate a casino. The vessels were operated, under a charter agreement, by Tropical Breeze Casino Cruz, LLC.

On January 14, 2018, the Island Lady was transporting passengers and crew members to the Tropical Breeze when an "[i]ncident involv[ing] a fire" occurred on the vessel, resulting in passenger injuries, one death, and the "total loss of the [v]essel" (Doc. 1, p. 2, ¶¶ 9, 10). There were 37 passengers aboard the vessel. Fifteen of those passengers paid a boarding fee of $5.00, nine paid a discounted rate and 13 passengers received

-2-

complimentary boarding (Doc. 222, p. 3, ¶8). The petitioners allege that they were not under any contractual obligations with any of the passengers at the time of the incident (id., ¶6).

The petitioners initiated this limitation action pursuant to the Limitation of Liability Act, 46 U.S.C. 30501, *et seq.* They allege that they are entitled to a limitation of liability because the "[i]ncident and any ensuing property loss, damages, personal injury and/or casualty were not caused by [p]etitioners' fault, or any person for whose actions [p]etitioners are responsible" (Doc. 1, ¶12). The petitioners also filed an *Ad Interim* Stipulation for Costs and Value, assessing the value of the Island Lady at $27,300 (Doc. 2).[1] Accordingly, the petitioners created a death and personal injury limitation fund of $27,300.

More than 20 passengers filed answers to the complaint and asserted claims of negligence against the petitioners (see, e.g., Docs. 16, 19, 22, 34). The claimants alleged that the petitioners breached their duty of reasonable care, and failed to maintain the vessel in a reasonably safe manner,

---

[1]According to the complaint, the "value of the [v]essel is zero" (Doc. 1, p. 3, ¶14). The fund of $27,300 is based upon the Island Lady's gross tonnage (Doc. 2, p. 2).

which constituted the proximate cause of their injuries (see, e.g., Doc. 21, pp. 9-11; Doc. 30, pp. 3-5; Doc. 19, pp. 9-11; Doc. 33, pp. 9-11).

Subsequently, claimant Christopher Rivera filed a Motion to Increase Security (Doc. 195), contending that the death and personal injury limitation fund is insufficient. Many claimants joined this motion. The petitioners filed a memorandum in opposition to the motion (Doc. 222). The parties, with leave of court, filed a reply and surreply (Docs. 243, 255).

Since the filing of the motion, several claimants have settled, including claimant Rivera, who filed the motion, and claimant Deborah Jero, whose counsel filed the reply (Docs. 285, 286). Therefore, neither attorney who drafted the memoranda in support of the motion appeared at the hearing. Consequently, attorney Justin Pimenta spoke on the claimants' behalf; however, that discussion was not particularly helpful because he had not drafted the memoranda, and he was placed on the spot to answer my questions.

## II.

The petitioners initiated this limitation action pursuant to the Limitation of Liability Act, which provides that "the liability of the owner of

vessel for any claim, debt or liability described in subsection (b)[2] shall not exceed the value of the vessel and pending freight." 46 U.S.C. 30505(a). The Act requires a shipowner to post security equal to the amount of the vessel's value. See 46 U.S.C. 30506(b). As indicated, the petitioners filed an *Ad Interim* Stipulation for Costs and Value in the amount of $27,300 (Doc. 2).

The claimants challenge the amount of the fund pursuant to Rule F(7) of the Federal Rules of Civil Procedure Supplementary Admiralty and Maritime Rules, which states that "[a]ny claimant may by motion demand that the funds deposited in court or the security given by the plaintiff be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight." Inherent in this Rule is a requirement that the claimant make some showing as to why the valuation of the vessel is inadequate. Crosby Marine Transp., LLC v. Triton Diving Servs., LLC, No. CV. 13-2399, 2014 WL 5026070 at *2 (W.D. La. Oct. 8, 2014).

---

[2]Claims subject to limitation include injury by collision occurring without the privity or knowledge of the owner.

III.

The claimants argue that the limitation fund of $27,300 is grossly

insufficient.  They contend that the petitioners

> should be required to post security in the form of a
> bond or Ad Interim Stipulation based on the
> "flotilla doctrine," which would also include the
> value of all the vessels involved in the "Tropical
> Breeze Casino" business, pending freight, and all
> appurtenances aboard the vessels, which should
> include the gambling machines.

(Doc. 195, p. 1).  Attorney Pimenta conceded at the hearing that the Tropical

Breeze's slot machines and casino earnings would not be included in the

liability fund.  However, the insured hull value of the Tropical Breeze casino

boat is $750,000.  Therefore, the value of that vessel, alone, far exceeds the

current fund.

The "flotilla doctrine" provides that the vessel owner's liability

"may be increased to include his interest in the value of all vessels engaged

in a common enterprise or venture with the vessel aboard which the loss or

injury was sustained."  Complaint of Patton-Tully Transp. Co., 715 F.2d 219,

222 (5th Cir. 1983).  Thus, under the flotilla doctrine, the value of all vessels

-6-

engaged in a venture are included in determining the value of the limitation fund, not solely the vessel on which the injury occurred.[3]

There are two tests used to determine the applicability of the flotilla doctrine.  One test examines whether a particular vessel is part of "common venture," such that it is "necessary to the performance of the contract." Complaint of Tom Quinn Co., 806 F.Supp. 945, 948.  Other courts apply a three part test inquiring whether there was: (1) common ownership; (2) a common enterprise; and (3) single command of the vessels.  Id.

The claimants argue that the Island Lady and the Tropical Breeze formed a "flotilla" because they were engaged in the common enterprise of offshore casino gambling, i.e., the Island Lady transported the passengers to

---

[3]For example, in the shipping context,

> where the cause of action is for loss of cargo being transported pursuant to a shipping contract, the entire flotilla—in that case a tug and the barge it was towing—engaged in the act of shipping can be regarded as the "vessel."....This is what is commonly referred to as the flotilla doctrine.

Complaint of Tom Quinn Co., 806 F.Supp. 945, 947 (M.D. Fla. 1992).  Although typically applied in the shipping context, "[t]he flotilla doctrine has been applied as well to personal injury claims by employees against employer/owners" based on the master/servant relationship. Id.; see, e.g., Complaint of Patton-Tully Transp. Co., supra, 715 F.2d at 222.

the Tropical Breeze casino boat, nine miles offshore (Doc. 195, p. 3, ¶10). They allege further that the petitioners owned and controlled both vessels.

The petitioners dispute that the flotilla doctrine applies. They argue that there was no common venture, nor was the Island Lady necessary to the operation of the Tropical Breeze, because the vessels did not require each other to operate or move (Doc. 222, pp. 9-10). Furthermore, the petitioners state that the Tropical Breeze continues to operate as a casino boat without the assistance of the Island Lady, or any other vessel. The petitioners, moreover, contend that the vessels were not under a single command because each had its own captain who controlled his respective vessel (id.). They note, in particular, that when the Island Lady developed a problem, its captain decided to return the vessel to shore without any directive to do so (id., p. 11).

The petitioners argue further that, in all events, the flotilla doctrine does not apply here because this matter falls within the "pure tort" exception to the flotilla doctrine (id., pp. 4-7). Oral argument focused on this issue. If the tort exception applies, there is no need to determine whether the flotilla doctrine test is met.

-8-

When determining the applicability of the flotilla doctrine, courts distinguish between whether liability arises out of a contractual relationship, or out of tortious conduct.   Matter of Cross State Towing Co., No. 90-1150-CV-J-16, 1991 WL 343372 at *1 (M.D. Fla. July 30, 1991).  When the alleged damage is inflicted tortiously, the tort exception applies and the vessel owner must surrender only the value of the "offending" or "actively responsible" vessel.  See Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724, 727 (5th Cir. 1967) (pure tort is one in which there is an "injury is to a third person to whom the shipowner owes no duty based upon consent.") (emphasis added).

However, if the vessel owner was engaged in the performance of a contract with the injured party at the time of the wrong, surrender of the combined means by which the owner undertook performance of the contract is required.  See id.; Sacramento Nav. Co. v. Salz, 273 U.S. 326, 332 (1927). Therefore, absent a recognized contractual relationship between the vessel owners and claimants, the breach of which caused the alleged injuries, the claim is referred to as a "pure tort," which is an exception to the flotilla

doctrine. See Sacramento Nav. Co. v. Salz, supra, 273 U.S. at 332; Brown &
Root Marine Operators, Inc. v. Zapata Off-Shore Co., supra, 377 F.2d at 727.

Here, the petitioners argue, correctly, that the claims in this
matter lie solely in tort. Thus, the claimants do not assert a claim for breach
of contract, nor could they, as there was no contract. See Jackson v. Carnival
Cruise Lines, Inc., 203 F. Supp. 2d 1367, 1378 (S.D. Fla. 2002) (If a maritime
contractual duty is created, "it must arise explicitly."). Rather, the claimants
assert that their damages were caused by the petitioners' negligence (see, e.g.,
Doc. 22, p. 5). Thus, a shipowner owes its passengers a duty of reasonable
care, the breach thereof "is a maritime tort." Kornberg v. Carnival Cruise
Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984); see also Everett v. Carnival
Cruise Lines, 912 F.2d 1355, n.3 (11th Cir. 1990) ("the vessel owner is not
liable to passengers as an insurer, but only for its negligence").

The claimants acknowledge that, in order to overcome the tort
exception, a contractual relationship is required. However, they contend that
they "only had to be in *a* contractual relationship with the Petitioners," and
that, as paying passengers, there was an implicit contract for transportation
to the casino boat (Doc. 243, pp. 5, 3) (emphasis in original). However, the

-10-

claimants have not asserted a breach of contract claim, and the claimants have not identified any legal authority applying the flotilla doctrine to passengers aboard a vessel whose claims lie in tort. Claimants' counsel states that this issue is one of first impression. However, the legal authority cited by the petitioners is much more compelling than what the claimants have presented.

The claimants cite to Vueltabajo, 163 F. 594, 596-97 (S.D. Ala. 1908), for the holding that an implicit contract between a passenger and the carrier arises based on payment of the fare, or something accepted as an equivalent therefor. However, Vueltabajo is neither apposite nor controlling authority. It also does not support the claimants' contention because the Vueltabajo court ultimately held that the passenger who was allegedly wronged could assert "a marine tort." 163 F. at 596-97.

In contrast, under the governing federal maritime law, it "is clear that a breach of contract cannot be implied" in favor of a passenger against a vessel. Stires v. Carnival Corp., 243 F.Supp.2d 1313, 1321 (M.D. Fla. 2002); Doe v. Celebrity Cruises, 145 F.Supp.2d 1337, 1346 (S.D. Fla. 2001). For example, in Doe v. Celebrity Cruises, Inc., 145 F.Supp.2d at 1346, the court held that there is no implied contractual duty to transport a paying

-11-

25

passenger "with the highest degree of care and vigilance for her safety."

Thus, "[i]f a contractual duty is created, it must arise *explicitly*."[4] Doonan v.

Carnival Corp., 404 F. Supp. 2d 1367, 1372 (S.D. Fla. 2005) (emphasis in

original); Jackson v. Carnival Cruise Lines, Inc., 203 F. Supp.2d 1367, 1378

(S.D. Fla. 2002).

Similarly, a ship's passengers are not covered by the warranty of

seaworthiness, which is a term that imposes absolute liability on a sea vessel

for the carriage of cargo and seamen's injuries. Kornberg v. Carnival Cruise

Lines, Inc., supra, 741 F.2d at 1335; Meadors v. Carnival Corp., 281 F. Supp.

3d 1304, 1307-08 (S.D. Fla. 2017).

Consequently, "in the absence of a specific contractual

provision, a breach of a vessel owner's duty of care is based in negligence, not

in contract." Meadors v. Carnival Corp., supra (emphasis added).  As

---

[4]The court in Gentry v. Carnival Corp., No. 11-21580-CIV, 2011 WL 4737062 at
*8 (S.D. Fla. Oct. 5, 2011) explained:

> To a great extent, this consideration appears to be based on
> the historic distinction in maritime law between the duty of
> care owed to crewmembers (a warranty of seaworthiness)
> and the lesser duty of care owed to fare-paying passengers
> (reasonable care under the circumstances)....Implying a
> contractual duty here would undermine this well-settled
> distinction.

summarized by the Fifth Circuit Court of Appeals, "an action by a passenger...[against] a carrier for neglect to carry and deliver in safety, is an action for the breach of a duty imposed by the law, independently of contract or of consideration, and is therefore founded in tort." <u>Associated Metals & Minerals Corp.</u> v. <u>ALEXANDER'S UNITY MV</u>, 41 F.3d 1007 (5ᵗʰ Cir. 1995) (<u>quoting</u> <u>The John G. Stevens,</u> 170 U.S. 113, 125 (1898)).

The claimants argued at the hearing that these cases are distinguishable because they involve the dismissal of a breach of contract claim, whereas the claimants are merely alleging the existence of "a" contractual relationship.  This tangential reference to a contractual relationship does not change the nature of the tort claim at the center of this case.  Notably, the claimants do not cite to any contract provision that was purportedly breached, but merely assert that the claimants paid a fee to board the Island Lady (Doc. 243, pp. 3-5).  This assertion does not convert this tort case into a contract case.  In other words, this case remains "a pure tort" case, so that the flotilla doctrine does not apply.

Moreover, the claimants' allegation that there was an implicit contract based upon paying a boarding fee leaves out almost one-half of the

-13-

passengers who received complimentary boarding.  The contention that the claimants, all of whom have the status of passengers, would not equally be entitled to an increase in security (and to share in the increased fund) is further reason to reject this argument.  The claimants have not addressed this complicating factor.

Finally, the petitioners argue, persuasively, that even if a contract could somehow be implied in this case, there is no contractual obligation permitting the application of the flotilla doctrine (Doc. 222, p. 7).  The flotilla doctrine concerns whether the damages were caused by the breach of a "contractual obligation[ ]."  See Sacramento Nav. Co. v. Salz, supra, 273 U.S. at 332.   Therefore, if there was an implied contractual obligation for transportation to the casino boat, the breach thereof (i.e., failure to arrive at the casino boat) did not involve the Tropical Breeze, nor did it cause the alleged injuries.  See Standard Dredging Co. v. Kristiansen, 67 F.2d 548 (contractual obligations involved any ships that it devoted to the performance of its contract); Sacramento Nav. Co. v. Salz, supra, 273 U.S. at 332 (when evaluating the applicability of the flotilla doctrine, ask "[w]hat constituted the vessel by which the contract of transportation was to be effected?").

-14-

In sum, there is no recognized contractual relationship between the petitioners and the claimants for the purpose of applying the flotilla doctrine. Rather, the passengers' claims are (appropriately) based in tort. Therefore, assuming <u>arguendo</u> that the claimants satisfied the elements of the flotilla doctrine, <u>see</u> <u>supra</u>, pp. 6-7, the tort exception to the flotilla doctrine applies, and the claimants are not entitled to an increase in the limitation fund.

IV.

For the foregoing reasons, the limitation fund is properly set at the value of the Island Lady. I therefore recommend that Claimant, Christopher Rivera's, Motion to Increase Security (Doc. 195) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JUNE _18_, 2019

NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.